UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-01179-RGK-MAR | Date | August 18, 2023 |
|---|---|---|---|
| Title | *Eurico Mancilla v. Owens and Minor Distribution, Inc.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Plaintiff's Motion for Remand [DE 15]

## I. INTRODUCTION

On April 3, 2023, Eurico Mancilla ("Plaintiff") filed a class action complaint in San Bernardino County Superior Court against Owens and Minor Distribution, Inc. ("Defendant"). (ECF No. 1-1.) Plaintiff brings the class action on behalf of himself and all others similarly situated. Plaintiff alleges that during the course of his employment, Defendant violated state wage and hour laws under the Cal. Lab. Code and the Cal. Bus. and Prof. Code §§ 17200, et seq., by failing to: (1) pay minimum wages; (2) pay overtime wages; (3) provide meal periods; (4) permit rest breaks; (5) reimburse business expenses; (6) provide accurate itemized wage statements; (7) timely pay wages during employment; and (8) pay all wages due upon separation of employment. (*Id.*)

On June 20, 2023, Defendant removed the action to this Court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(b), 1332(d), 1441(b), and 1446. (ECF No. 1.) On July 21, 2023, Plaintiff filed the current Motion to Remand ("Motion"). For the following reasons, the Court **GRANTS** Plaintiff's Motion.

## II. FACTUAL BACKGROUND

Plaintiff is a citizen of California who worked for Defendant during the relevant period alleged in the Complaint. (Compl. ¶ 26.) Plaintiff seeks to represent himself and a class of all California citizens currently and formerly employed by Defendant as non-exempt employees in the state at any time between October 7, 2018 and the date of class certification. (*Id.* ¶ 20.) Plaintiff also seeks to certify a subclass ("Waiting Time Subclass"), which consists of all members who separated their employment with Defendant at any time between October 7, 2019, and the date of class certification. (*Id.* ¶ 21.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-01179-RGK-MAR | Date | August 18, 2023 |
|---|---|---|---|
| Title | *Eurico Mancilla v. Owens and Minor Distribution, Inc.* | | |

Plaintiff alleges that during the relevant time period, Defendant violated state wage and hour laws by failing to: pay all wages (including minimum wage and overtime wages), provide meal and rest breaks or payments in lieu thereof, reimburse for necessary business-related expenses, provide accurate itemized wage statements, pay timely during employment, and pay all wages due after separation of employment. (*Id.* ¶¶ 29–35, 61, 68, 94.) Accordingly, Plaintiff seeks monetary and injunctive relief against Defendant on behalf of Plaintiff and all class members.

### III.  JUDICIAL STANDARD

A defendant may remove a case from state court when federal court has original jurisdiction. 28 U.S.C. § 1441(a). Under CAFA, district courts are vested with original jurisdiction over putative class actions where (1) the amount in controversy exceeds $5 million, (2) the class members number at least 100, and (3) at least one plaintiff is diverse from any one defendant. 28 U.S.C. § 1332(d)(2).

Federal courts must "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The strong presumption against removal jurisdiction places the burden on the defendant to show by preponderance of the evidence that removal is proper. *Id.* at 566–67. The enactment of CAFA does not alter this rule. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("[When enacting CAFA] Congress intended to maintain the historical rule that it is the proponent's burden to establish a prima facie case of removal jurisdiction."). Although a presumption against federal jurisdiction exists in run-of-the-mill diversity cases, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

A removing party's notice of removal need only state "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. However, when a plaintiff challenges the defendant's assertion of the amount in controversy, evidence establishing the amount is required. *Id.* "Along with the complaint, [courts] consider allegations in the removal petition, as well as 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (quoting *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)). When the plaintiff disputes that the amount in controversy is satisfied, "[c]onclusory allegations as to the amount in controversy are insufficient" to satisfy the removing party's burden of proof. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). A defendant must "persuade the court that the estimate of damages in controversy is a reasonable one." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-01179-RGK-MAR | Date | August 18, 2023 |
|---|---|---|---|
| Title | *Eurico Mancilla v. Owens and Minor Distribution, Inc.* | | |

## IV.  DISCUSSION

Plaintiff seeks remand of this action on the ground that the requisite amount in controversy has not been met. The Court agrees that the amount in controversy has not been established by a preponderance of the evidence. Therefore, remand is proper.

In the Notice of Removal, Defendant estimates that the amount in controversy is $6,432,991. (Notice of Removal at 9.) Defendant changes the calculation slightly in its Opposition to the Motion to Remand, providing supplemental declarations to establish that the amount in controversy is $6,279,052. (Def's. Opp'n at 12, ECF No. 22.) Defendant's revised amount in controversy estimate is based primarily on: (1) unpaid minimum wages and overtime violations; (2) meal period violations; (3) rest break violations; (4) inaccurate wage statements; (5) waiting time penalties for the Waiting Time Subclass; and (6) attorneys' fees. The Court discusses each in turn.

### A.  Unpaid Minimum Wages and Overtime

Plaintiff alleges that Defendant "engaged in a systematic pattern of wage and hour violations" and failed to pay Plaintiff and Class Members at least minimum wage and overtime wages for all hours worked. (Compl. ¶ 3). Defendant estimates that the amount in controversy for these violations is $1,402,380, calculated as follows:

44,100 workweeks x 1 off-the-clock hour per week x $21.20 average hourly rate x 1.5 overtime rate of pay = $1,402,380. (Def's. Opp'n at 6.)

In arriving at this figure, Defendant first determined that the putative class members worked a combined 44,100 workweeks over the relevant period. Defendant then assumed every class member must have worked at least one off-the-clock hour per week. Defendant then determined that the average shift length worked by putative class members was 8.6 hours. Because the average shift length exceeded a typical eight-hour workday, Defendant assumed that every uncompensated minute should be paid at least the overtime rate, and accordingly used the average overtime hourly rate.

Plaintiff argues that Defendant's assumption of a 100% violation rate for unpaid wages rests on a misinterpretation of Plaintiff's usage of "Plaintiff and Class Members," which Defendant uses as evidence that violations occurred against each and every class member every week. The Court agrees.

The Ninth Circuit has held that a removing defendant is permitted to utilize a "chain of reasoning that includes assumptions" when assessing damages. *Ibarra*, 775 F.3d at 1199. However, "those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* "An

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-01179-RGK-MAR | Date | August 18, 2023 |
|---|---|---|---|
| Title | *Eurico Mancilla v. Owens and Minor Distribution, Inc.* | | |

assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019).

Defendant calculated the amount in controversy by assuming that each and every class member worked at least one hour of unpaid overtime wages per workweek, given that the average length of the shift worked by putative class members was 8.6 hours and every uncompensated minute should be paid the overtime rate. Because Plaintiff does not allege a 100% violation rate and Defendant's supplemental declarations do not provide any evidence of a 100% violation rate, Defendant's assumption that 100% of employees worked at least one hour of overtime pay per workweek is purely speculative. Defendant does not offer any explanation nor points to any allegations to support their assumption that every aggrieved class member suffered overtime violations. Thus, Defendant provides no evidentiary support for why the above assumptions are reasonable, and therefore has not demonstrated by a preponderance of the evidence that these violations establish $1,402,380 as the amount in controversy.

**B.   Meal and Rest Break Violations**

Plaintiff likewise alleges a "systematic pattern" of wage and hour violations, including failures to provide Plaintiff and Class Members with all meal and rest breaks or payment of one additional hour of pay when a meal or rest break was missed, late, or interrupted. (Compl. ¶¶ 3, 30–31.) Defendant estimates the amount in controversy for meal break violations and rest period violations to be $773,554 each, calculated as follows:

182,442 meal-eligible shifts x 20% assumed violation rate x $21.20 average meal period premium = $773,554. (Def's. Opp'n. at 6.)

182,442 rest-eligible shifts x 20% assumed violation rate x $21.20 average rest period premium = $773,554. (*Id.*)

In reaching the estimate of $773,554 for each type of violation, Defendant determined from timekeeping records that 182,442 shifts were at least five hours long and therefore eligible for a meal period and at least one rest period. The average meal or rest period premium was $21.20, based on the class members' average hourly wage. Finally, Defendant asserts that complaints alleging a systematic pattern of wage and hour violations lend a reasonable assumption of a 20% violation rate. *Cardenas v. Asplundh Constr., Corp.*, 2022 WL 370960 at *2 (C.D. Cal. Feb. 8, 2022); *Luna v. Pronto Cal. Gen. Agency, LLC*, 2020 WL 4883879, at *3 n.1 (C.D. Cal. Aug. 19, 2020).

The Court finds Defendant's estimates to be adequately supported. Defendant provides sufficient evidence establishing the number of meal- and rest-eligible shifts, the average premiums for violations, and caselaw to support an assumed 20% violation rate. Therefore, Defendant has demonstrated by a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-01179-RGK-MAR | Date | August 18, 2023 |
|---|---|---|---|
| Title | *Eurico Mancilla v. Owens and Minor Distribution, Inc.* | | |

preponderance of the evidence that these violations each establish $773,554 as the amount in controversy.

### C. Inaccurate Wage Statements

Plaintiff alleges that Defendant violated the Labor Code by failing to provide Plaintiff and Class Members with accurate wage statements. Defendant estimates the amount in controversy for these violations to be $743,100, calculated as follows:

(120 class members x $4,000 statutory maximum) + (238 initial pay period violations x $50 penalty for initial violation) + (2,512 subsequent pay period violation x $100 penalty for subsequent violation) = $743,100. (Def's. Opp'n. at 8–9.)

In calculating this estimate, Defendant assumed that 100% of wage statements were inaccurate. As Defendant explained in its Opposition, any predicate violation, such as unpaid overtime or skipped meal and rest breaks, renders a wage statement inaccurate. Because Defendant could reasonably assume that meal and rest break violations occurred 20% of the time, it could also assume that each two-week, ten-workday wage statement period must have contained at least 1 violation, for a violation rate of 100%. Starting from this assumption, Defendant determined that of the 358 putative class members, 120 received enough wage statements to have hit the $4,000 statutory maximum, whereas the remaining 238 did not, instead incurring a $50 penalty for their first, initial pay period violation, and $100 for 2,512 subsequent pay period violations.

Defendant's assumption that every wage statement violates the Labor Code simply because there are multiple predicate violations that *could have* occurred is speculative. Defendant only proffers evidence of the *number* of wage statements issued during the relevant time period, but fails to provide any support for its assumption that every single wage statement issued resulted in a wage statement penalty. While, as explained above, it may be reasonable to assume a 20% violation rate for predicate violations, Defendant does not identify any binding authority or allegation in the Complaint that would allow it to assume that those 20% of violations were equally spread out so as to render 100% of wage statements inaccurate. *See Ibarra*, 775 F.3d at 1199–1200 ("[A] 'pattern and practice' of doing something does not necessarily mean *always* doing something.") (emphasis in original); *cf. Arias*, 936 F.3d at 927 (finding 100% violation rate supported by allegation that "[n]ot one of the paystubs" was accurate). Thus, Defendant has not demonstrated by a preponderance of the evidence that these violations establish $743,100 as the amount in controversy.

### D. Waiting Time Penalties

The Waiting Time Subclass consists of all class members who separated their employment with Defendant between October 7, 2019 and the date of class certification. Plaintiff alleges that the Waiting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-01179-RGK-MAR | Date | August 18, 2023 |
|---|---|---|---|
| Title | *Eurico Mancilla v. Owens and Minor Distribution, Inc.* | | |

Time Subclass is entitled to recover from Defendant the statutory penalty because Defendant failed to pay the Waiting Time Subclass all earned wages at time of discharge or within 72 hours of leaving Defendant's employ. Defendant estimates the amount in controversy for these violations to be $1,640,075, calculated as follows:

327 Waiting Time Subclass members x $19.44 average rate of pay x 8.6 average shift length x 30 days' worth of penalties = $1,640,075. (Def's. Opp'n at 9–10.)

In calculating this estimate, Defendant determined that the subclass consisted of 327 members who had an average rate of pay of $19.44, and an average shift length of 8.6 hours at the time of termination. Defendant assumed that every member of the Waiting Time Subclass is entitled to 30 days' worth of waiting time penalties because more than 30 days have lapsed since Defendant filed its Notice of Removal.

The Court finds Defendant's estimate to be adequately supported. Defendant provides sufficient evidence establishing the size of the subclass, their average rate of pay, average shift length, and its assumption of a 100% violation rate.[1] Therefore, Defendant has demonstrated by a preponderance of the evidence that these violations establish $1,640,075 as the amount in controversy.

E. **Attorneys' Fees**

Plaintiff seeks reasonable attorneys' fees pursuant to Code of Civ. Proc. § 1021.5 and Lab. Code §§ 226(e) and 1194, which allow for recovery of fees for overtime claims, wage statement claims, waiting time claims, but not meal or rest period claims. *Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1260–61 (2016) (explaining that attorneys' fees are not recoverable for meal and rest period claims); *disapproved of on other grounds in Naranjo v. Spectrum Security Servs., Inc.*, 13 Cal. 5th 93, 115–118 (2022). Defendant estimates the amount in controversy for attorneys' fees to be $946,389, as follows:

$1,402,380 (overtime violations) + $743,100 (wage statement violations) + $1,640,075 (waiting time violations) = $3,785,555 x 25% benchmark = ~$946,389. (Def's. Opp'n at 11–12.)

---

[1] Plaintiff argues that this estimate should be revised downward because courts typically calculate waiting time penalties using the standard 8-hour workday, rather than Defendant's proposed average 8.6-hour workday. *See Hernandez v. Martinez*, 2014 WL 3962647, at *13–14 (N.D. Cal. Dec. 12, 2014) (using an 8-hour workday). It is unclear if this is the case here, where Plaintiff alleges that Defendant further failed to pay overtime. However, the Court need not decide this issue because, as discussed below, even using the greater amount calculated using the 8.6-hour workday, Defendant fails to establish an amount in controversy greater than $5,000,000.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-01179-RGK-MAR | Date | August 18, 2023 |
|---|---|---|---|
| Title | *Eurico Mancilla v. Owens and Minor Distribution, Inc.* | | |

In calculating this estimate, Defendant uses a percentage-of-recovery method by which a Defendant can estimate attorneys' fees as a percentage of expected recovery. Specifically, Defendant uses a 25% benchmark, which has been found to be reasonable in some but not all circumstances. *Fritsch*, 899 F.3d at 796 (declining to adopt a per se rule that 25% is reasonable in a class action suit). Regardless of whether 25% is reasonable in this case, as explained above, Defendant fails to provide evidence to support its underlying estimates for overtime and wage statement violations. Thus, Defendant has not demonstrated by a preponderance of the evidence that attorneys' fees establish $946,389 as the amount in controversy.

**F.     Total Amount in Controversy**

As explained above, the only amounts in controversy that Defendant has adequately demonstrated by a preponderance of the evidence are:

- Meal period violations: $773,554
- Rest period violations: $773,554
- Waiting time violations: $1,640,075

These amounts combine to a total of $3,187,183, below the $5 million threshold required for removal. Accordingly, the Court finds remand proper.

**V.     CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion and **REMANDS** the action to state court.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | JRE/snf |

cc: San Bernardino County Superior Court, CIV SB 2308374